**EXHIBIT E**

Record and Return to:
MADISON TITLE AGENCY, LLC
COMMERCIAL DEPT
1125 OCEAN AVE.
LAKEWOOD, NJ 08701
INTRPA-000425

## Assumption, Modification and Release Agreement

This Assumption, Modification and Release Agreement ("Agreement") is made effective as of the 18th day of January, 2005 by and among Yoel Realty LLC, a New York Limited Liability Company ("Transferor"), Freshwater of Harrisburg LLC, a New York Limited Liability Company, ("Transferee"), and Fannie Mae.

### RECITALS:

A. Fannie Mae is the holder of that certain Note dated February 20, 2002 (the "Note") in the original principal amount of $8,000,000.00 made by Harrisburg Hills Realty Associates, L.P. to Independence Community Bank ("Original Lender"), which Note evidences a loan ("Loan") made by Original Lender to Harrisburg Hills Realty Associates, L.P. To secure the repayment of the Note, Harrisburg Hills Realty Associates, L.P. also executed and delivered a Mortgage, dated February 20, 2002 (together with all riders, modifications, amendments and supplements thereto, collectively, the "Security Instrument") and recorded in the Official Records of Dauphin County, State of Pennsylvania on February 22, 2002, in Record Book 4287 at Page 89, that grants a lien on the property described in Exhibit A to this Agreement (the "Property"). The Note and Security Instrument were thereafter duly assumed by Transferor pursuant to that certain Assumption, Modification and Release Agreement dated October 9, 2002 by and among Harrisburg Hills Realty Associates, L.P., Transferor and Fannie Mae and duly recorded in the Official Records of Dauphin County, State of Pennsylvania on October 15, 2002 in Record Book 4576 at Page 544. The Transferor is liable for the payment and performance of all of Borrower's obligations under the Note, the Security Instrument and all other documents executed in connection with the Loan, as listed on Exhibit B to this Agreement (collectively, the "Loan Documents"). Each of the Loan Documents has been duly assigned or endorsed to Fannie Mae. The current servicer of the Loan is Independence Community Bank ("Servicer").

B. Intentionally Omitted.

C. Fannie Mae has been asked to consent to the transfer of the Property to the Transferee and the assumption by the Transferee of the obligations of the Transferor under the Loan Documents.

D. Fannie Mae has agreed to consent to the transfer of the Property by Transferor to Transferee subject to the terms and conditions stated below.

In consideration of the foregoing and the mutual covenants and promises set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Fannie Mae, Transferor, and Transferee agree as follows:

BK5859PG 591

1.    **Assumption of Obligations.** The Transferee agrees to assume all of the payment and performance obligations of the Transferor set forth in the Note, the Security Instrument and the other Loan Documents in accordance with their respective terms and conditions, as modified by this Agreement, including without limitation, payment of all sums due under the Note.

2.    **Transferor's Representations and Warranties.** The Transferor represents and warrants to Fannie Mae as of the date of this Agreement that:

    (a) The Note has an unpaid principal balance of $7,762,628.62, and prior to default bears interest at the rate of seven and nineteen hundredths percent (7.19%) per annum;

    (b) The Note requires that monthly payments of principal and interest in the amount of $54,248.67 be made on or before the first day of each month, continuing to and including March 1, 2017, when all sums due under the Loan Documents will be immediately due and payable in full;

    (c) The Security Instrument is a valid first lien on the Property for the full unpaid principal amount of the Loan and all other amounts as stated in the Security Instrument;

    (d) There are no defenses, offsets or counterclaims to the Note, Security Instrument or the other Loan Documents;

    (e) There are no defaults by the Transferor under the provisions of the Note, the Security Instrument or the other Loan Documents;

    (f) All provisions of the Note, Security Instrument, and other Loan Documents are in full force and effect;

    (g) There are no subordinate liens of any kind covering or relating to the Property, except as set forth herein, nor are there any mechanics' liens or liens for unpaid taxes or assessments encumbering the Property, nor has notice of a lien or notice of intent to file a lien been received; and

The Transferor understands and intends that Fannie Mae will rely on the representations and warranties contained herein.

3.    **Transferee's Representations and Warranties.** The Transferee represents and warrants to Fannie Mae as of the date of this Agreement that Transferee has no knowledge that any of the representations made by Transferor in Paragraph 2 above are not true and correct.

4.    **Consent to Transfer.** Fannie Mae hereby consents to the transfer of the Property and to the assumption by the Transferee of all of the obligations of the Transferor under the Loan Documents, subject to the terms and conditions set forth in this Agreement. Fannie Mae's consent to the transfer of the Property to the Transferee is not intended to be and shall not be construed as a consent to any subsequent transfer which requires the Lender's consent pursuant to the terms of the Security Instrument.

5. __Amendment and Modification of Loan Documents__. Fannie Mae hereby agrees to (and Transferor consents to,) a modification and amendment of the Loan Documents as follows:

(a) __Intentionally Omitted__.

(b) __Amendment to Security Instrument__. The Security Instrument is hereby amended as set forth in Exhibit C attached hereto. Transferee accepts and agrees to all representations, covenants and agreements as set forth in Exhibit C.

(c) __Intentionally Omitted__.

(d) __Intentionally Omitted__.

(e) __Limitation of Amendment__. Except as expressly stated herein, all terms and conditions of the Loan Documents, including the Note and the Security Instrument, shall remain unchanged and in full force and effect.

(f) __Further Assurances__. Transferee agrees at any time and from time to time upon request by Fannie Mae to take, or cause to be taken, any action and to execute and deliver any additional documents which, in the opinion of Fannie Mae, may be necessary in order to assure to Fannie Mae the full benefits of the amendments contained in this Paragraph 5.

6. __Intentionally Omitted__.

7. __Priority/Modification__. This Agreement embodies and constitutes the entire understanding among the parties with respect to the transactions contemplated, and all prior or contemporaneous agreements, understandings, representations, and statements, oral or written, are merged into this Agreement. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument in writing signed by the party against which the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument. Except as expressly modified hereby, the Note, Security Instrument and other Loan Documents shall remain in full force and effect and this Agreement shall have no effect on the priority or validity of the liens set forth in the Security Instrument or the Loan Documents, which are incorporated herein by reference. Transferor hereby ratifies the agreements made by it/them to Fannie Mae in connection with the Loan and agree(s) that, except to the extent modified hereby, all of such agreements remain in full force and effect.

8. __Release of Transferor__. In reliance on the Transferor's and the Transferee's representations and warranties in this Agreement and in consideration for the releases contained in Paragraph 13 of this Agreement, Fannie Mae releases the Transferor from its obligations under the Loan Documents, provided, however, that the Transferor is not released from any liability pursuant to this Agreement or Paragraph 18 of the Security Instrument (Environmental Hazards provision) executed by the Transferor for any liability that relates to the period prior to the date hereof, regardless of when such environmental hazard is discovered. If any material element of the representations and warranties made by the Transferor contained herein is false as of the date of this

Agreement or in the event any party (other than Fannie Mae) takes any actions which are in contradiction with the provisions of Paragraph 13 of this Agreement, then the release set forth in this Paragraph 8 will be cancelled as of the date of this Agreement and the Transferor will remain obligated under the Loan Documents as though there had been no such release.

9. **No Impairment of Lien.** Nothing set forth herein shall affect the priority or extent of the lien of any of the Loan Documents, nor, except as expressly set forth herein, release or change the liability of any party who may now be or after the date of this Agreement, become liable, primarily or secondarily, under the Loan Documents. Except as expressly modified hereby, the Note, Security Instrument and Loan Documents shall remain in full force and effect and this Agreement shall have no effect on the priority or validity of the liens set forth in the Security Instrument or the Loan Documents, which are incorporated herein by reference.

10. **Costs.** The Transferee and the Transferor agree to pay all fees and costs (including attorneys' fees) incurred by Fannie Mae and the Servicer in connection with Fannie Mae's consent to and approval of the transfer of the Property, and a transfer fee of $77,779.65 in consideration of the consent to that transfer.

11. **Financial Information.** The Transferee represents and warrants to Fannie Mae that all financial information and information regarding the management capability of Transferee provided to the Servicer or Fannie Mae was true and correct as of the date provided to the Servicer or Fannie Mae and remains materially true and correct as of the date of this Agreement.

12. **Addresses.**

   Transferee's address for notice hereunder and under the Loan Documents is:

   Freshwater of Harrisburg LLC
   5 Neil Road
   Spring Valley, New York 10977

   Transferor's address for notice hereunder and under the Loan Documents is:

   Yoel Realty LLC
   c/o Seth Goldberg, 1379 Coney Island Avenue
   Brooklyn, New York 11230

13. **Complete Release.** Transferee and Transferor, unconditionally and irrevocably release and forever discharge Original Lender, Fannie Mae, and their respective successors, assigns, agents, directors, officers, employees, and attorneys, and each current or substitute trustee under the Security Instrument (collectively, the "Indemnitees") from all Claims, as defined below, and jointly and severally agree to indemnify Indemnitees, and hold them harmless from any and all claims, losses, causes of action, costs and expenses of every kind or character in connection with the Claims or the transfer of the Property. Notwithstanding the foregoing, Transferor shall not be responsible for any Claims arising from the action or inaction of Transferee, and Transferee shall not be responsible for

BK5859PG 594

any Claims arising from the action or inaction of Transferor. As used in this Agreement, the term "Claims" shall mean any and all possible claims, demands, actions, costs, expenses and liabilities whatsoever, known or unknown, at law or in equity, originating in whole or in part, on or before the date of this Agreement, which the Transferor, or any of its respective partners, members, officers, agents or employees, may now or hereafter have against the Indemnitees, if any, and irrespective of whether any such Claims arise out of contract, tort, violation of laws, or regulations, or otherwise in connection with any of the Loan Documents, including, without limitation, any contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate applicable thereto and any loss, cost or damage, of any kind or character, arising out of or in any way connected with or in any way resulting from the acts, actions or omissions of Indemnitees, including any requirement that the Loan Documents be modified as a condition to the transactions contemplated by this Agreement, any charging, collecting or contracting for prepayment premiums, transfer fees, or assumption fees, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, breach of funding commitment, undue influence, duress, economic coercion, violation of any federal or state securities or Blue Sky laws or regulations, conflict of interest, NEGLIGENCE, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, deceptive trade practices, libel, slander, conspiracy or any claim for wrongfully accelerating the Note or wrongfully attempting to foreclose on any collateral relating to the Note, but in each case only to the extent permitted by applicable law. Transferor and Transferee agree that Fannie Mae and Original Lender have no fiduciary or similar obligations to Transferor or Transferee and that their relationship is strictly that of creditor and debtor. This release is accepted by Fannie Mae and Original Lender pursuant to this Agreement and shall not be construed as an admission of liability on the part of either. Transferor and Transferee hereby represent and warrant that they are the current legal and beneficial owners of all Claims, if any, released hereby and have not assigned, pledged or contracted to assign or pledge any such Claim to any other person.

14.     Miscellaneous.

   (a) This Agreement shall be construed according to and governed by the laws of the jurisdictions in which the Property is located without regard to its conflicts of law principles.

   (b). If any provision of this Agreement is adjudicated to be invalid, illegal or unenforceable, in whole or in part, it will be deemed omitted to that extent and all other provisions of this Agreement will remain in full force and effect.

   (c) No change or modification of this Agreement shall be valid unless the same is in writing and signed by all parties hereto.

   (d) The captions contained in this Agreement are for convenience of reference only and in no event define, describe or limit the scope or intent of this Agreement or any of the provisions or terms hereof.

   (e) This Agreement shall be binding upon and inure to the benefit of the parties and

their respective heirs, legal representatives, successors and assigns.

(f) This Agreement may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

(g). THIS WRITTEN AGREEMENT AND THE OTHER LOAN DOCUMENTS, AS AMENDED, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BK5859PG 596

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Freshwater of Harrisburg LLC

By: _____
   Yitzchok Altman
   Managing Member

Yoel Realty LLC

By: _____
   Joel Gutman
   Member

Fannie Mae

By: _____
   Larry Fenwick
   Assistant Vice President

BK5859PG 597

State of New York    )
                     : ss.:
County of New York   )

On the 18th day of January, 2005, before me, the undersigned, personally appeared Yitzchok Altman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

MICHAEL L. DONINI
Notary Public, State of New York
No. 01DO6087869
Qualified in New York County
Commission Expires Sept. 8, 2007

State of New York    )
                     : ss.:
County of New York   )

On the 18th day of January, 2005, before me, the undersigned, personally appeared Jeno Guttman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

MICHAEL L. DONINI
Notary Public, State of New York
No. 01DO6087869
Qualified in New York County
Commission Expires Sept. 8, 2007

State of Maryland      )
                       : ss.:
County of Montgomery   )

On the 19th of December, 2005 before me, the undersigned, personally appeared Larry Fenwick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

I hereby CERTIFY that this document is recorded in the Recorder's Office of Dauphin County, Pennsylvania.

James M. Zugay, Esq.
Recorder of Deeds

BK 5859 PG 598

Exhibit "A"
To
Assumption, Modification and Release Agreement

All those certain plots, pieces, or parcels of land with the buildings and improvements thereon erected, situate, lying, and being in the City of Harrisburg, Dauphin County, Pennsylvania, more particularly bounded and described according to a Survey by Robert G. Hartman, Jr., Registered Surveyor, dated August 1, 1986, revised August 15, 1986, as follows, to wit:

TRACT NO. 1:

BEGINNING at a point being the southeast corner of Shamokin Street (60 feet wide) and Green Street (120 feet wide);

THENCE along the South side of Shamokin Street North 87 degrees 26 minutes 30 seconds East 147 feet to a point being the southwest corner of Shamokin Street and Susquehanna Street (25.5 feet wide);

THENCE extending along the West side of Susquehanna Street South 02 degrees 33 minutes 30 seconds East 565 feet to a point at the northwest corner of Susquehanna Street and Wiconisco Street (60 feet wide);

THENCE extending along the North side of Wiconisco Street South 87 degrees 26 minutes 30 seconds West 147 feet to a point at the northeast corner of Wiconisco Street and Green Street;

THENCE extending along the East side of Green Street North 02 degrees 33 minutes 30 seconds West 565 feet to a point, the place of BEGINNING.

TRACT NO. 2:

BEGINNING at a point being the southwest corner (erroneously stated as southeast corner in prior deeds) of Shamokin Street (60 feet wide) and Green Street (120 feet wide);

THENCE along the West side of Green Street South 02 degrees 33 minutes 30 seconds East 565 feet to a point at the northwest corner of Green Street and Wiconisco Street (60 feet wide);

THENCE extending along the North side of Wiconisco Street South 87 degrees 26 minutes 30 seconds West 147 feet to a point at the northeast corner of Wiconisco Street and Penn Street (25.5 feet wide);

THENCE extending along the East side of Penn Street North 02 degrees 33 minutes 30 seconds West 565 feet to a point at the southeast corner of Penn Street and Shamokin Street;

BK5859PG 599

THENCE extending along the South side of Shamokin Street North 87 degrees 26 minutes 30 seconds East 147 feet to a point, the place of BEGINNING.

TRACT NO. 3:

BEGINNING at a point, the Northwest corner of Carey Street (50 feet wide) and an unnamed twenty (20) feet wide alley;

THENCE extending from said beginning point along the Northern side of said alley North 81 degrees 51 minutes 37 seconds West 270.00 feet to a point, the Northeast corner of said alley and Thomas Street (50 feet wide);

THENCE extending along the Eastern side of Thomas Street, North 08 degrees 08 minutes 23 seconds East 465.62 feet to a point on the South side of Parkway Boulevard (135 feet wide);

THENCE extending along said Parkway Boulevard on an arc of a circle curving to the right having a radius of 300.64 feet, an arc length of 58.46 feet along the South side of said Parkway Boulevard;

THENCE South 40 degrees 25 minutes 37 seconds East 297.03 feet to a point on the West side of Carey Street;

THENCE extending along the said side of Carey Street South 08 degrees 08 minutes 23 seconds West 234.86 feet to a point, the place of BEGINNING.

TRACT NO. 4:

BEGINNING at a point, being the Southwest corner of Parkway Boulevard (135 feet wide) and Thomas Street (50 feet wide);

THENCE extending along the Westerly side of Thomas Street South 08 degrees 08 minutes 23 seconds West 501.96 feet to a point;

THENCE extending along lands now or formerly of J.W. Kline and the City of Harrisburg the following three courses and distances: (1) North 81 degrees 51 minutes 37 seconds West 80.00 feet, (2) North 08 degrees 08 minutes 23 seconds East 80.00 feet and (3) North 81 degrees 51 minutes 37 seconds West 221.91 feet to a point;

THENCE continuing along lands now or late of the City of Harrisburg the following two courses and distances: (1) North 48 degrees 08 minutes 24 seconds East 158.06 feet and (2) North 04 degrees 38 minutes 37 seconds West 385.00 feet to a point on the Southerly side of Parkway Boulevard;

THENCE extending along said Parkway Boulevard the following two courses and distances: (1) South 67 degrees 28 minutes 37 seconds East 266.90 feet and (2) on the arc of a circle curving to the right having a radius of 300.64 feet the arc length of 28.21 feet to the point and place of BEGINNING.

BK 5859 PG 600

TRACT NO. 5:

BEGINNING at a point, being the southeast corner of Wiconisco (60 feet wide) and Green Street (120 feet wide);

THENCE along the South side of Wiconisco Street, North 87 degrees 26 minutes 30 seconds East 147 feet to a point at the southwest corner of Wiconisco Street and Susquehanna Street (25.5 feet wide);

THENCE extending along the West side of Susquehanna Street South 02 degrees 33 minutes 30 seconds East 565 feet to a point, the northwest corner of Susquehanna Street and Radnor Street (60 feet wide);

THENCE extending along the North side of Radnor Street, South 87 degrees 26 minutes 30 seconds West 147 feet to a point, the northeast corner of Radnor Street and Green Street;

THENCE extending along the East side of Green Street, North 02 degrees 33 minutes 30 seconds West 565 feet to a point, the place of BEGINNING.

TRACT NO. 6:

BEGINNING at a point being the southwest corner of Wiconisco Street (60 feet wide) and Green Street (120 feet wide);

THENCE extending along the West side of Green Street South 02 degrees 33 minutes 30 seconds East 565 feet to a point at the northwest corner of Radnor Street (60 feet wide) and Green Street (120 feet wide);

THENCE extending along the North side of Radnor Street South 87 degrees 26 minutes 30 seconds West 147 feet to a point being the northeast corner of Radnor Street and Penn Street (25.5 feet wide);

THENCE extending along the East side of Penn Street North 02 degrees 33 minutes 30 seconds West 565 feet to a point being the southeast corner of Wiconisco Street and Penn Street;

THENCE extending along the South side of Wiconisco Street North 87 degrees 26 minutes 30 seconds East 147 feet to a point, the place of BEGINNING.

TRACT NO. 7:

BEGINNING at a point being the southeast corner of Radnor Street (60 feet wide) and Green Street (120 feet wide);

THENCE along the South side of Radnor Street North 87 degrees 26 minutes 30 seconds East 147 feet to a point at the southwest corner of Radnor Street and Susquehanna Street (25.5 feet wide);

BK 5859 PG 601

THENCE extending along the West side of Susquehanna Street South 02 degrees 33 minutes 30 seconds East 565 feet to a point at the northwest corner of Susquehanna Street and Schuylkill Street (60 feet wide);

THENCE extending along the North side of Schuylkill Street South 87 degrees 26 minutes 30 seconds West 147 feet to a point at the northeast corner of Schuylkill Street and Green Street;

THENCE extending along the East side of Green Street North 02 degrees 33 minutes 30 seconds West 565 feet to a point, the place of BEGINNING.

TRACT NO. 8:

BEGINNING at a point being the southwest corner of Radnor Street (60 feet wide) and Green Street (120 feet wide);

THENCE along the West side of Green Street South 02 degrees 33 minutes 30 seconds East 565 feet to a point at the northwest corner of Green Street and Schuylkill Street (60 feet wide);

THENCE extending along the North side of Schuylkill Street South 87 degrees 26 minutes 30 seconds West 147 feet to a point at the northeast corner of Schuylkill Street and Penn Street (25.5 feet wide);

THENCE extending along the East side of Penn Street North 02 degrees 33 minutes 30 seconds West 565 feet to a point at the southeast corner of Penn Street and Radnor Street;

THENCE extending along the south side of Radnor Street North 87 degrees 26 minutes 30 seconds East 147 feet to a point, the place of BEGINNING.

BEING THE SAME PREMISES which Nelo Apartments, LLC, conveyed unto Harrisburg Hills Realty Associates, L.P., by deed dated February 9, 2000 and recorded February 14, 2000 in the Recorder's Office in and for Dauphin County, PA., in Record Book 3610 at Page 381.

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises to the center line thereof.

SAID PREMISES being known as and by the street numbers 2500 Green Street and 10 Carey Street, Harrisburg, Pennsylvania.

BK5859PG 602

<u>Exhibit "B"</u>
<u>To</u>
<u>Assumption, Modification and Release Agreement</u>

1. Multifamily Note dated February 20, 2002, by Harrisburg Hills Realty Associates L.P. for the benefit of Independence Community Bank.

2. Mortgage, Assignment of Rents and Security Agreement, including a Rider to Multifamily Instrument, dated February 20, 2002, by Harrisburg Hills Realty Associates L.P. for the benefit of Independence Community Bank duly recorded in the Official Records of Dauphin County, State of Pennsylvania on February 22, 2002, at Record Book 4287 at Page 89.

3. Assumption, Modification and Release Agreement dated October 9, 2002 between Harrisburg Hills Realty Associates, L.P., Yoel Realty LLC and Fannie Mae and duly recorded in the Official Records of Dauphin County, State of Pennsylvania in Record Book 4576 at Page 544.

BK5859PG 603

<u>Exhibit "C"</u>
<u>to</u>
<u>Assumption, Modification and Release Agreement</u>

All references to "mortgagor" in this Exhibit are designed to conform to the Security Instrument and mortgagor means the Transferee as defined in this Agreement. All references to "mortgagee" in this Exhibit are designed to conform to the Security Instrument and mortgagee means Fannie Mae as defined in this Agreement.

The terms of the Security Instrument are amended as follows:

A.     Subparagraphs numbered 22(e) and 22(j) in the Security Instrument are hereby deleted and replaced by the following subparagraphs:

      22(e)   any default under or failure to comply with any provision set forth in Exhibit B;

      22(j)   any Transfer unless specifically permitted.

B.     Paragraph number 34 in the Security Agreement is hereby deleted and replaced by the following paragraph:

      34.   SUCCESSORS AND ASSIGNS BOUND. This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted under any of the terms of this Instrument shall be an Event of Default.

C.     Paragraph number 1 in Exhibit B (Modification to Instrument) in the Security Instrument is hereby deleted and replaced by the following paragraph:

The term "Transfer" as defined in Section 1(z) is hereby expanded to include, but not be limited to, with respect to the Mortgaged Property: a) an installment sales contract; b) a lease with an option to buy; c) a lease for more than three (3) years including renewal terms; d) a transfer of stock of the Borrower, if Borrower is a corporation; e) any change in the general partners comprising Borrower, as same presently exist, including any transfer of stock in any corporate general partner, if Borrower is a partnership; f) any change in the members comprising the Borrower, if the Borrower is a limited liability company; and g) the creation of any other lien or encumbrance involving a transfer of rights of occupancy.

Notwithstanding anything contained in this Instrument to the contrary, Lender hereby agrees that the following Transfers are hereby specifically permitted.

    a.   Transfers of membership interests of the Borrower between and among Yitzchok Altman and Yitzchok Stefansky (the "Members");

    b.   Transfers of membership interests in the Borrower from any Member to his/her respective spouse and/or non-minor child or children;

BK 5859 PG 604

c.  Borrower's transfer of the Mortgaged Property to a partnership, corporation, limited liability company, or any other entity provided the party recited in or permitted under subsections (a) and/or (b) above continue (ask) to hold a 100% equity interest in said entity;

d.  A transfer to which the Lender has consented;

e.  Intentionally Omitted; and

f.  A transfer of obsolete or worn out personalty or fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created hereby or consented to by Lender.

Provided, however, that none of the above permitted Transfers shall be or be deemed to be or operate in any way as a full or partial release of the Borrower from any of the liabilities or indemnities set forth in this Instrument.

D.  Paragraph number 5 in Exhibit B (Modification to Instrument) in the Security Instrument is hereby deleted.

E.  The following is hereby added to paragraph number 14 (b) of the Security Instrument:

(8) within sixty (60) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, the personal financial statement(s) of any and all guarantor(s) of all or any portion of the loan secured thereby ("Personal Financial Statement").

F.  Paragraph number 14 (c) is hereby deleted and replaced by the following:

(c)  Each of the statements, schedules and reports required by Section 14(b) (1) through (7), inclusive, shall be certified to be complete and accurate by an individual having authority to bind Borrower, and shall be in such form and contain such detail as Lender may reasonably require. The Personal Financial Statement required by section 14(b)(8) shall be certified as complete and accurate by a certified public accountant and contain such schedules and reports as may in the Lender's determination be necessary, together with such information as the Lender in its sole discretion may require. Lender also may require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

BK5859PG 605

**UCC FINANCING STATEMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME: **Freshwater of Harrisburg LLC**

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

10. MISCELLANEOUS:

I hereby CERTIFY that this document is recorded in the Recorder's Office of Dauphin County, Pennsylvania.

James L. Zugay, Esq.
Recorder of Deeds

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor (11a or 11b) - do not abbreviate or combine names
   11a. ORGANIZATION'S NAME
   OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
   11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY
   11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any  ☐ NONE

12. ☐ ADDITIONAL SECURED PARTY'S or  ☒ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)
   12a. ORGANIZATION'S NAME
   OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
   12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing

14. Description of Real Estate:
From: 2500 Green Street and 10 Carey Street
Town: Harrisburg, Pennsylvania 17110
County: Dauphin
Parcel #s 09-095-001, 10-049-003, 10-051-010, 10-051-011, 10-057-001, 10-050-009 and 10-058-001

15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest)

16. Additional collateral description:

17. Check only if applicable and check only one box.
   Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
   ☐ Debtor is a TRANSMITTING UTILITY
   ☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
   ☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY - UCC FINANCING STATEMENT ADDENDUM (FORM UCC1ad) (REV 05/22/02)

BK 5859 PG 608